Mr. Justice Clayton
delivered the opinion of the court.
The first question submitted in argument grows out of an exception to the competency of an Indian, whose deposition was offered in evidence. That point has already been settled at the present term of the court, in favor of his competency. Doe, ex dem. Harris v. Newman, 3 S. & M. 565.
The next question is whether actual registration by the agent is necessary to entitle a Choctaw head of a family to a reservation, or whether the Indian becomes entitled by signifying his intention to the agent. The words of the treaty are, “Each Choctaw head of a family, being desirous to remain and become a citizen of the state, shall be permitted to do so, by signifying his intention to the agent, within six months from the ratification of the treaty.” It was in proof that the lessor of the plaintiff made the application within the six months to be registered, and signified his intention to become a citizen, but the agent refused to register him. In this the Indian did all that he could to comply with the provisions of the treaty, and if anything were wanting to a literal compliance, it was prevented by the agent of the government. It is the same thing, therefore, as if there had been an actual registration by the agent, and the government is equally bound by it. The opinion of the Chancellor in Land v. Land, 1 S. & M. Chan. Rep. 158, on this point commands our entire assent.' To this effect the attorney general of the United States likewise gave his opinion in regard to the construction of the treaty. He says, “ that all Choctaw heads of families who shall prove by credible evidence, documentary or oral, that they actually and in good faith signified to the proper- agent in due time, their intention to remain, and who have resided the proper time on the land, are entitled to the reservations secured by the treaty, notwithstanding their names may not have been entered by' the agent on the list.” *47 2 Public Land Laws, 210. The same principle forms the basis of our congressional legislation on the subject. 1 Public Land Laws, 563.
It has already been decided by this court that a legal title is vested in the Indian by the treaty itself, and that no patent from the government is necessary to complete it. Newman v. Harris & Plummer, 4 How. 560. The case before us differs from that just cited in only one or two unimportant particulars. In that the Indian was actually registered, but having no improvement at the date of the treaty, his location- was also registered by the locating agent. In this case the Indian had an improvement on which he resided at the date of the treaty, and there was no registration of his location. In the same case it is hólden, that location may be proven by parol, because it makes no part of the title, but relates -merely to the identity of the land. Ib. 556, 557.
Had the location been marked on the books of the locating agent, it is probable that the register of the land office would not have permitted the land to be entered by those who dispossessed the Indian. Yet it is in proof that the entry was made in gross fraud. Before the entry the person for whom it was made filed an affidavit, that no one lived on the land, although he knew that the Indian lived upon it, and had been frequently told by the Indian that the land was his. This was most palpably fraudulent. Afterwards he procured a man to pull down the Indian’s house, to put him off by force and drive him away, after his crop was planted.
According to the case in 4 Howard, the treaty itself is a grant, or operates as such, to those Indians who signify their intention to remain and become citizens. The title to a section of land, including the improvement, becomes complete, when such intention is signified to the agent, liable to be forfeited unless sustained by five years’ residence. The removal, to amount to forfeiture, must be voluntary, and not brought about by the force of others. 7 Yer. 46; 8 Ib. 461; 5 Ib. 343. In this case it was in proof that the Indian resided on the land in contfoversy at the date of the treaty, and continued to reside *48 upon It, until he was forced away by the agents of Rowe, under whom the defendant claims. This could not operate a divestiture of his title. 7 Yer. 46.
The only doubt at any time entertained in this case, was whether the remedy was at law or in equity. The treaty conferred the title; no patent was necessary, as it was itself equivalent to a deed or grant. 4 How. 559; Mitchell v. United States, 9 Peters, 734. Before the treaty the land belonged to the Choctaws as a nation. It was regarded as their common property from generation to generation, not as the right of individuals located on particular spots. Theirs was a right to retain possession, and to use it according to their own discretion, though not to dispose of the soil except to the government. That claimed the ultimate dominion, and the exclusive right to grant the soil, subject to the Indian right of occupancy. 3 Kent, 379; Johnson v. M’Intosh, 8 Wheaton. By the third article of the treaty the lands are all ceded to the United States, but by the fourteenth article, there is. reservéd to each Lead of a family one section of land to be surveyed so as to include his or her improvement. The parties to the treaty held the whole property in these lands, the one the right of occupancy, the other the fee, and by their joint act they confer the whole property in severalty, in a certain portion of the lands Upon those Indians, who intended to remain and become citizens. The Choctaw nation gave the immediate - right of occupancy, the United States gave the ultimate fee, and the reservees thus became clothed with the full title, subject only to be divested, in case of failure to comply with the condition of residence of five years.
The supreme court has said, “it is an universal rule that purchases made at Indian treaties, in the presence and with the approbation of the officer, under whose direction they are held, give a valid title to the lands. It prevailed under the colonial government, and under the laws of the States, after the revolution. It has been adopted by the United States, and purchases made at treaties -held by their authority, have always been held good by the ratification of the treaty, without any patent to the purchasers from the United States.” 9 Peters, 748. If pur *49 chases made from Indians are thus deemed complete legal titles upon the ratification of the treaty, reservations to them by treaty must stand on as high ground. A compact or treaty is as effectual to convey a legal title as a patent. 3 Dallas, 456; 1 Kent, 165. It was admitted, upon the trial, that the defendant was in possession of the land in controversy, claiming title under entries made in the land office at Columbus. It was the duty of the United States’not to alienate -the lands reserved, whilst the right of the reservee continued, and if they did so, by mistake or otherwise, the grant was wholly void, because of the want of authority to make it. New Orleans v. United States, 10 Peters, 663.
No error is perceived in the judgment of the court below, and the same is hereby in all things affirmed.